May it please the Court, I'm Charles Jacob. I'm here representing the appellants, Tammy Phillips and her corporation. I'd ask for three minutes as rebuttal. All right, please watch the clock. Thank you. The case here is about a debtor who has been denied a discharge for taking away about $60,000 worth of securities in the bankruptcy case, taking them from the estate. And here today we're on an appeal because the debtor also wants to walk away with $100,000 in the form of a homestead exemption. And the bankruptcy judge, because of her views on the estate property, is going to let him do that. And that is so, even though our brief was a... Her views or her view of the law? Her view of the law on equitable conversion and that sort of thing. So that, I think, binds the trustee. The law, as we showed in the brief, we said the Jacobson case shows that the exemption could never be more than $75,000. If you follow California public policy and law, which we put in the addendum, which says that the maximum exemption is fixed at the time the creditor's lien is attached, and there's no dispute in this case that ours was attached in 2008. I'm still worried about whether we have jurisdiction over this case. Bullard creates a continuum, I guess, as to when a decision within the bankruptcy proceeding itself is a final order over which we have jurisdiction. It's clear that an adversary action that has a beginning, middle, and end would create a final order, whereas a motion to extend time or a contested matter over time would not. So there's a very long list of exemptions. And so if we said that an exemption constituted a contested matter, I guess a grant of an exemption or a denial of a challenge to exemption, was the sort of final order over which we had jurisdiction, would that have to extend to the dozens of other exemptions under federal and state law? So why wouldn't we just say this is just one of those passing decisions and it would be appealable at the end of the bankruptcy case? As I showed in a supplementary brief, thank you. We were asked to prepare supplementary briefs on that issue. The Ninth Circuit has a long tradition of having, starting the Brissett case, defining the time to appeal as after the allowance or the disallowance of an exemption. But those are all pre-Bullard, so now we're in a different world. We're in the post-Bullard world. As I indicated in the brief, Your Honor, I see no case that has suggested any difference here. And following the Bullard analysis, our brief said, well, looking at the list of contested core matters and following the Bullard's analysis, this seems to be it. Is there a decision to grant or allow an exemption? And that would be your disputed, your relevant dispute. So your position is every time there's a decision on a claim of exemption, then that's an appealable final order? That, I understand, is the law. Where it is the allowance or disallowance. The administration is something else. It's a different matter. Congress defines it as a separate sort of contested matter. And this has been apparently the practice in all the courts, perhaps with one exception in the Eleventh Circuit. But the Eleventh Circuit doesn't seem to be following that case. In Schomburg, in contrast, this is a Seventh Circuit case. The court said that an order rejecting an objection to settlement, which effectively let the settlement stand, was not an appealable final order. Why isn't denying a challenge to an exemption, which effectively lets an exemption stand, analogous to that? I'm not familiar with that case from the Seventh Circuit. But the Brissett case and the White case, N. Ray White from this circuit, expressly goes into the fact that administration is significant in bankruptcy cases. And this basically relates to the entire administration process by the trustee. That's the green light or the red light. Are there other exemption claims at issue in this particular bankruptcy? It's entirely through. I was going to ask. Your answer was no, correct? There are no more exemptions. Okay. And this is a discrete issue that, at least from your perspective, is important to the resolution of the case. Yeah. And there's nothing left to do. The bankruptcy court. He's been denied a discharge, right? He's been denied a discharge, as I understand it, and I haven't seen anything different. Even if you're denied a discharge, in theory, you could be getting your exemptions. They're disparate. And correct me if I'm wrong. If we were to get to the merits and disallow the exemption or order a recalculation of its amount, it might produce assets that the creditors could lom onto, correct? Yes. Conversely, if we affirmed it, both as to allowance and amount, that's the remaining source from which creditors could find additional funds, correct? Correct. How much in the way of assets are we talking about in this case? Is there a record? It's difficult to say because in the case of a bankruptcy. This is Chapter 13, obviously. Chapter 7. We are in the Chapter 7 case. And I understand Chapter 13 exemptions have a different function. But in this case, there's the issue of appreciation in the market. But we know that we believe at the present time there's money there to be distributed. And this $100,000 directly affects. How much are we talking about? What are we talking about? What's your best judgment as to the amount of money? What does it appear to be? I'm not a real estate analyst, but Zillow says something like $670,000, $700,000 for this house. So has your client, the amount that your client would get from the estate hasn't been fixed. Is that correct? No. Everything's waiting for this court to resolve this issue. Okay. So you don't know whether the $100,000 would affect what your client gets or not? Oh, I'm pretty sure it would. You're pretty sure? How is that? So there's an estate and there's various creditors. There's the value of the house. There's these mortgage first and second mortgage holders. And then there's us as judgment creditors. But the $100,000 exemption is there, which could crowd us out of receiving money. But you don't know. That hasn't been determined at this point. Well, it's always fluid because of the changes in the market. The resolution of this issue will decide that, correct? The trustee is waiting for it, I believe. But it won't decide how much your client gets necessarily, right? You don't know that because you don't know the size of the estate. If we uphold the exemption and the amount, the case is over, right? No. No, no, I meant in terms of assets that the creditors you represent could attach. Basically, that's how we see it. School's out, right? That's how we see it. There's one other asset, and we don't know whether it's in or out of the estate. It has this equitable conversion issue. There was another piece of property in the same boat. It was in escrow at the time of the petition. Do you want to save the rest of your time for rebuttal? Yes. Thank you. We'll hear from the other side. Good morning, Your Honors. Mark E. Ellis on behalf of the debtor. Mr. Gilman, good morning. Why don't you push that microphone up just a little bit closer to you and speak a little louder. Can you hear me now? Yes. Thank you. All right. So on the substance, I really don't have anything to add to the briefs. I do want to address what I think now, standing in front of you, as opposed to a week ago when I submitted my supplemental brief, which was short, and I apologize for that since I was in trial. But I actually think that this is a discreet final issue also. Oh, you agree with the other side? I do. I do. And we almost never agree on anything or have in this case. But on that, I do agree. Looking through the cases again more closely, and really as informative as Bullard is, I really think it's this circuit's decision in, I'm not going to pronounce this right, Kahan or Kahan. Yeah. Bullard involved an attempted appeal from a refusal to confirm a plan, right? Under Chapter 13. And there's always, in that instance, you can propose a different plan. Exactly. And that makes perfect sense there. So I really don't think that Bullard is, although the analysis informs us today, I think that it's this circuit's case in Gugliuzza, I'm sorry, G-U-G-L-I-U-Z-Z-A. It's one of the cases that the panel asked us to brief in our supplemental briefing. That really, I think, has an outstanding analysis. But using that analysis, I really do believe, whether you're following Bullard or this circuit's decision in Gugliuzza, again, I apologize, I think that this really is a final, I think there's been a final determination of a discrete issue. There was, and if you go back and look at the record, you'll see in the excerpts from records at page 31 through 33, Judge Carter actually, in his December 3, 2015, order, actually kind of went through this analysis and talks about it. And he came to the same conclusion. Of course, that was pre-Bullard. But if you look at that, I think that's the same decision. The one thing that he asked about is there was another exemption being claimed, a disability exemption being claimed at that point in time. And he thought that that may have led to a series of seriatim decisions. So is that the case? In other words, there was a decision about the disability exemption, so there could have been an appeal from that one as well. Correct. So your view is that any decision on an exemption would be appealable? Because I don't see how you would make a distinction between a homestead exemption and other exemptions. It would all be whatever the court denies a challenge to an exemption, then it would be appealable. So, Your Honor, in answer to your question, and you're probably not going to like this answer, but when I'm in front of a circuit court of appeals, I never say always, and I never say never. Just on general principles, you may be right, I don't know. I think this is a very complicated area of law, and I think that I don't really have to, we don't really have to face that here now since that exemption was denied. And so this is the only one that's left. And, you know, the 30 days have passed, you know, to challenge any exemptions. So they're not going to be reopened up again at this point in time. What else remains to be done in this case? Well, so the. . . The district's been denied the district. Right. So what's left? So the adversary proceeding to your right is gone. So that's over now. So in the main case, there still has to be a final determination, I guess, of what the creditor's claim actually is. I mean, there to date has been no liquidation for bankruptcy purposes of the claim. So I don't know if it's $200,000 or $400,000 or $600,000. No one knows that. And the trustee has not weighed in. The trustee has not come in and said, okay, what I want to do is value the house, the residence, and say that it's $700,000, and then what we're going to do is we're going to levy that, and then what we'll do is we'll give you $100,000 back on your homestead, and then we'll apply it to the other creditors. All of that still needs to be done, Your Honor. So that's where we're at. So the creditors, as counsel for the creditors, as this determination of the exemption will affect his recovery, that's clear. Is that clear? That is clear. That's precisely right. Do you want to talk about the merits? Well, I mean, I think that, you know, on the merits, with respect to the exemption, this is an exemption under CCP, California Code of Civil Procedure, 704730A2. And it's $100,000. It's not $75,000. And Judge Kaufman found that. Judge Carter affirmed that. And under California law, there are really two things that you need to have, and that is you need to have residency on the date that the petition is filed and continuous, and then you have to have the intent to stay in the house. And the only issue that was ever raised here, Your Honor, was the fact that on the day the petition was filed, the house was in escrow. And it was in escrow because Mr. Gilman, who, by the way, is sitting at counsel table right here to my right, was attempting to liquidate the house to pay off the creditor's claims. Because we could never get a liquidated number, that fell through. And on the day, and this is undisputed in the record, on the day that the petition was filed, escrow was being terminated. Was there any evidence submitted about the intent to stay in the house? That's one of the arguments that opposing counsel makes. Well, the only argument that was made against the intent to stay in the house, I'll comment from the other way, Your Honor, is that it was in escrow. But I think the, as Judge Kaufman found and as Judge Carter found, you know, there were lots of inferences that you could draw. Was there a declaration about the intent to stay in the house or any other evidence? I did not. I don't think there is anything like that in the record. And, you know, I apologize. I'm looking at the record pretty much as the panel is because I was not the attorney at that time, as I think that you folks have seen. I came in in mid-2016. So I review the record in the same way that you do. And if there are no other questions, thank you very much for your time. Apparently not. Thank you. Thank you. Thank you, Your Honor. The short answer is that what the court did is an excerpt of Record 177. The judge who had done a ruling in 2012 adopted it by an order on January 6 of 2015. In 2012, there was no discussion about the property being in escrow because there was a misrepresentation in the schedules, and it was a purposeful misrepresentation. Judge Carter, who seems to be doing fact-finding when he's supposed to be sitting in the appellate capacity, does reference some decisions, the Weil case. And I think the Weil case might be wrongly decided, and this Court has it right in the Pearl case. Cross-reference, please, the Fontaine footnote case in footnote 16, which says the property is incorrect. The Fontaine case suggests that the Tarleson and Donaldson cases relied on, and the Ellick case are incorrect. There are a number of things that have just been stated that are also incorrect about escrow being in the process of being closed. My opposing counsel has suggested these are findings. There was never any finding about that. In fact, there are no references in his brief to the record showing that. They basically are just quoting an interrogatory response that was prepared, a self-serving response that someone threw into the case. There was never any hearing about that. And any time you're in a sale, the question is, well, what do you want to do? Are you planning to leave? Mr. Gilman was planning to leave because he had a sale, and I think I'm overseeing my welcome here, but if I may just round up here. We submitted documents in a request for judicial notice that showed that he and his wife could not afford the mortgages they had on that property, so there were reasons for them to move out of that property other than satisfying creditors. Okay. We thank you for your arguments. Thank you. The case of Phillips v. Gilman is submitted.
judges: Parker, Hawkins, Ikuta